## CHAPIN *vs.* WEED and others.

A trustee cannot become the purchaser, for his own benefit, of that property assigned to him in trust; and it would seem that he could not become such purchaser, even though the sale was a judicial one, and made without the contrivance or procurement of the trustee, unless by the order of sale he was expressly allowed so to purchase.
If a trustee becomes the purchaser of such trust property, he holds it for the benefit of his *cestui que trust.*

THE defendant Elias Weed, was made the assignee of the complainant, Theodore Chapin, by an assignment of all Chapin's property in trust for the payment of his debts. Among other property so as-

signed, was a farm upon which there was a previous
incumbrance by mortgage, and five acres of land ad-
joining to said farm and necessary to it, which Cha-
pin occupied, upon some alleged parol agreement to
purchase, and had made erections thereon. The
previous mortgage upon the farm was foreclosed;
and upon the master's sale, Weed became the pur-
chaser in his own name. Weed also, after endea-
voring to consummate the parol agreement in regard
to the five acres, finally made an absolute purchase
of it from the owner by a new bargain, and took the
deed in his own name. Chapin and some of his cre-
ditors filed a bill against Weed and others, for an
account of the trust, and obtained an injunction re-
straining Weed from selling, or disposing of, or in-
terfering with, the farm and the five acres. Upon
Weed's answer coming in, a motion is made to dis-
solve the injunction.

*A. Gardiner*, for complainant.

*W. S. Bishop* and *C. M. Lee* for defendants.

THE VICE CHANCELLOR. The idea of the com-
plainants doubtless is, that Weed, by the assignment
from Chapin, being trustee for Chapin's creditors,
could not purchase any of the property so assigned,
for his private benefit. In this respect, the rule in
relation to all classes of trustees is well settled. A
trustee cannot purchase or be interested in the pur-
chase of the trust estate, or any part thereof. He
cannot derive any private advantage from the sale of
the trust property committed to his guardianship;
and all the advantages which he does thus impro-
perly acquire, shall result to the benefit of the *cestui*

59

*que trust.* These elementary principles are discussed at length, and their authority and propriety ably enforced, and the authorities bearing upon them collated with clearness and precision, in Devoe vs. Fanning, 2 Johns. Chan. Rep. 252; Rogers vs. Rogers, 1 Hopkins, 515; Hawley vs. Cramer, 4 Cowen, 717; and they are recognized in Case vs. Abeel, 1 Paige, 393; and in DeCatus vs. Le Ray de Chaumont, 3 Paige, 178. It is only necessary barely to refer to these cases for the law and the reason of it. In the case before us, Weed was the grantee of the farm and of the equitable interests of Chapin in the five acres, by virtue of an assignment or grant, in trust for creditors. Though as to the five acres, Weed was unable to complete the alleged parol agreement, and took the title thereto under a new bargain; yet, as Chapin had made improvements thereon of some considerable value, it is but fair to presume that these improvements and the previous conversation about the sale, had some influence in reducing the price fiinally paid; and it would be dangerous as a precedent to consider Weed as the absolute purchaser of these five acres in his own right, or to look upon him as a purchaser in any other light than as a trustee, and for the benefit of the *cestui que trust.* The purchase too made by Weed of the farm at the master's sale, seems to have been made fairly, openly, and publicly, and after notice was given to some of the creditors, of the sale, and a request to them to relieve this farm from the incumbrance. There is no pretence, either, that this sale was made by procurement of or connivance with Weed.

The defendants, while they acknowledge the gre-

neral duties and liabilities of trustees as above stated, insist that the rule thus laid down applies only to sales made by the trustees themselves, or by their procurement and with their connivance. They insist that it does not apply to compulsory sales under an adverse claim, nor to judicial sales ordered at the instance of a stranger to the trust.

Most of the cases cited to sustain the great leading principle, it is true, arose out of sales made by the procurement of or under the discretion of the trustees. In Van Horm vs. Fonda, 5 Johns. Chan. Rep. 388, the Chancellor lays down the general doctrine that an executor or trustee cannot buy in mortgages, judgments, or other debts of the testator, for his own benefit; nor can he in any way deal or traffic with the estate for his own emolument. In that case, the trustee purchased judgments and other incumbrances upon the trust estate; and upon a sale under those incumbrances, purchased the estate. There was, however, strong and satisfactory evidence of fraud, and deception, and misrepresentation, and a prevention of bidders, by declaring that he was purchasing for the benefit of the trust estate, which would of itself have been sufficient to have charged him as trustee by such purchase.

In Evertson vs. Tappan, 5 Johns. Chan. Rep. 497, the trustees themselves purchased the trust property under an elder mortgage, and it was decreed that she should hold it for the benefit of the *cestui que trust.* But it is to be observed in this case also, that the foreclosure of the mortgage was procured by the trustee; and that the declarations attending the purchase, were, that the purchase was made for the benefit of the *cestui que trust.*

Neither of these last two cases, therefore, decide specifically the naked question bearing upon the purchase by a trustee of the trust property under a previous incumbrance.

In the case of Jackson vs. Woolsey, 11 Johns. Rep. 446, the Supreme Court decided that the purchase by a guardian *ad litem*, for an infant in partition, under a sale made by the commissioners of partition, did not make the proceedings fraudulent ; and that the deed to such guardian would be deemed valid, without circumstances of direct fraud, or collusion. In that case, it is put upon the ground that the sale itself was made by order of the court, and was made in public, and that the court must be presumed subsequently to have confirmed it.

In a case cited by Chancellor Kent, 2 Johns. Chan. Rep. 268, The York Buildings' Company vs. Mackenzie, decided by the House of Lords in England, in 1795, the sale was a judicial one, and the purchase was made by an agent whose official duty it was to affix a value to the property, at which it should be offered at auction as the upset price. There was no question, then, about the fairness and integrity of the transaction ; yet the House of Lords set aside the sale.

In the case before us, the sale under which Weed purchased the farm, was a judicial one. There is no pretence of collusion or connivance by Weed, to produce the sale. The sale was public and open, and no contrivance was resorted to to prevent persons from bidding, i. e. the answer denies such, though the bill alleges it. And the trustee was declared the highest bidder. I am not informed, however, what the provisions of the decree were, under which the

sale was made. My impression is, that without spe-
cial authority from the court ordering the sale, the
trustee could not become a purchaser for his own
benefit; and if there was such authority, if the as-
signor or any of the *cestui que trust* were induced
to believe that the trustee was bidding for the benefit
of the trust fund, the sale should be deemed to be
for the benefit of such fund.

It is dangerous to permit trustees to tamper with the
trust property in any way for their own private benefit.
It is, as Chancellor Kent says, "*poisonous in its
consequences.*" The prudent course in this case, will
be to retain the injunction, at least until the hearing.
But as there is no suggestion of insolvency in the
trustee, it is a mere waste of property to prevent him
from occupying the premises, and cultivating them
to some profit. He must be permitted to occupy,
but must be restrained from selling. The injunction
is therefore modified so far as to permit the trustee
to occupy the premises, and retained so far as to re-
strain him from selling or disposing of the farm or
the five acres mentioned in the pleadings. Costs to
abide the event.