### CHARLESTON.

FEAMSTER *v.* FEAMSTER.

(HOLT, J., Absent.)

Submitted January 22, 1891.—Decided March 7, 1891.

1. JUDGMENT—ASSIGNMENT—TRUSTS.

Where a judgment is assigned to a party for the benefit of infant children, and the same judgment was assigned to another party for the benefit of said children, and in a chancery suit pending both of said assignees file petitions respectively, claiming to be entitled to the control of said judgment, the successful party in said contest must be regarded as having accepted said assignment, and subsequently as holding said judgment as trustee for said infant children.

2. JUDGMENT—ASSIGNMENT—LIEN—TRUSTS.

Said judgment being a lien upon the lands of a party, and prior judgment liens existing against the same lands, which is

the only estate of the judgment-debtor, said land, under the circumstances, must be regarded as the trust-subject, and can not be purchased by the trustee for his individual benefit at a judicial sale.

3. JUDGMENT—ASSIGNMENT—LIEN—TRUSTS.

    If said land is purchased by said trustee at a price which fails to satisfy the judgment of the *cestui que trust,* and is resold by said trustee at a profit, said *cestui que trust* may have said profits applied towards the payment of their judgments so held by said trustee.

*J. M. McWhorter* and *Okey Johnson* for appellants, cited 16 W. Va. 32; 21 W. Va. 617; 18 Atl. Rep. 463; 2 Johns. Ch'y 252; Sto. Eq. Juris. §§ 321, 322, 465; Perry Trusts §§ 129, 130, 197, 212, 219, 427, 432; 30 Cal. 586; 4 Cow. 717; 9 Paige 237, 241; 4 Kent Comm. 438; 80 Mo. 75; 36 Ark. 383; 10 Minn. 401.

*John A. Preston* for appellee, cited 127 U. S. 589; 1 Pet. C. C. 378; 32 Pa. St. 315; 6 Watts and S. 18; Perry Trusts § 205; Hill Trustees 250; 8 S. C. 1334; 9 Pa. St. 270.

ENGLISH, JUDGE.

Patsy Feamster, the mother of Joseph A. Feamster and S. W. N. Feamster, was the owner of a judgment against Joseph A. Feamster amounting to five thousand two hundred and forty nine dollars and seventy two cents as of April 20, 1885; and on the 5th day of March, 1885, she made two assignments of said judgment for the benefit of the children of her son Joseph A. Feamster by his wife, Mary J. Feamster, who are the plaintiffs in this suit, and Willie L. Feamster, their brother, who has since departed this life without issue. One of said assignments was made to Joseph A. Feamster, and the other to S. W. N. Feamster; both of said assignments being made for the use and benefit of said children of Joseph A. Feamster. In a chancery suit, brought in the year 1886 by Mary J. Feamster against Joseph A. Feamster and others, the lien-creditors of the said Joseph A. Feamster were convened under the provisions of the statute, and were classified and reported by a commissioner, to whom the cause was referred with a view

of obtaining a decree for the sale of said land, and said judgment was classed No. 6. Said Joseph A. Feamster and S. W. N. Feamster filed their respective assignments, each claiming control of said judgments and the proceeds thereof. These claims were referred to a commissioner, who took evidence and reported thereon, and at the hearing the court decided the controversy in favor of S. W. N. Feamster; holding that he held the valid assignment of said judgment. The land of said Joseph A. Feamster was directed to be sold, and the liens, prior to said judgment, which was held by S. W. N. Feamster in trust for the plaintiffs, who were children of the said Joseph A. Feamter, amounted to about two thousand dollars. After said land had been advertised by the commissioners appointed to make sale thereof, one S. W. Anderson came to see one of the commissioners about the sale thereof, and proposed purchasing part of it, and said he wanted about one hundred acres thereof. At said sale said S. W. N. Feamster became the purchaser at the price of two thousand three hundred dollars of said tract of land containing three hundred and twenty acres, said Anderson being present at the sale, but refusing to bid; and said sale was reported to the court by the commissioners appointed to make the same, and not being excepted to was confirmed.

The children of said Joseph A. Feamster, Annie C. Feamster, Maud E. Feamster, and Pattie Alderson Feamster—the last two of whom are infants, and sue by their next friend—filed their bill on the first Monday in March, 1890, in the Circuit Court of Greenbrier county, against said S. W. N. Feamster, in which they set forth the above facts, and further allege that before said sale was confirmed by a decree of said court to the defendant he sold a part of the land to said Anderson for something over three thousand dollars ; that the tract of land was very valuable, and should have brought a much larger price ; that it had been sold by the same commissioners at a former time for seven thousand dollars, which sale for some cause had been set aside ; that the defendant, having undertaken to act as trustee for plaintiffs, should have encouraged bidders, so as to have made the land bring as large a sum as possible for the bene-

fit of his *cestuis que trust;* and that, having assumed the trust, the law made it his duty to promote the interests of plaintiffs, who were infant children of his brother, but that, instead of doing this, the land was sold at about half price, the trustee was the purchaser, and one was present wanting one hundred acres of the land, but in accordance with an understanding with the defendant declined to bid, and soon after the sale was made, he paid the defendant over thirty dollars per acre for one hundred and five and three fourths acres of the land ; that the bidders were forestalled, and the defendant purchased the whole tract at half of its value or less, and then sold one third of it for a sum sufficient to reimburse himself and make a profit of one thousand dollars or upwards, and still retains over two hundred acres of the land : that in settling up their accounts of receipts and disbursements, the commissioners who made the sale had a balance of thirty one dollars and seventy five cents to return to said trustee after paying costs of suit, expenses of sale and the liens prior to the one in favor of Patsy Feamster, now for the use of plaintiffs, which sum the defendant admits the plaintiffs are entitled to on their judgment. They charge that the conduct of their said trustee constitutes a fraud upon their rights ; that they are entitled to the benefit of any profit realized by him ; and they call upon him to disclose the true amount for which he sold said one hundred five and three fourths acres to S. W. Anderson, and pray that he may be required to account to and pay over to plaintiffs, as they become of age, their respective shares of what he made over and above what he paid for said land, and that the two hundred acres or upwards remaining in his hands may be decreed to be sold for the benefit of plaintiffs, or that he may be required to account to them for the value thereof, and the rents and profits of the same during the time he has had it in possession.

On the 2nd of May, 1890, the plaintiffs filed an amended bill, in which they allege that since filing their original bill they have learned that the arrangement for the sale of the land to S. W. Anderson after the defendant purchased it was made by Joseph A. Feamster, the brother of the

defendant, who in that matter was acting as the agent and with the knowledge and consent of the defendant; that the defendant resided near the land sold, as did Joseph A. Feamster, and knew all about its great value, and the liens attaching to said land which were prior to the lien held in trust by the defendant for plaintiffs, which amounted to near two thousand dollars, and then came plaintiffs' lien, amounting to over five thousand dollars, which defendant controlled, and which he could and did use to his own advantage. They further allege that in the same class with plaintiff's judgment, viz., class 6, was reported a judgment in favor of W. P. Rucker against Joseph A. Feamster for the sum of one hundred and forty nine dollars and fifty five cents, with interest from April 30, 1885 ; that one Edgar P. Rucker prepared an upset bid and offered to give good security thereon at the sum of three thousand dollars, and was going to file it in the cause, and ask the sale to defendant to be set aside, when the defendant through some of his friends agreed that if the upset bid should not be put in, and if the sale should be confirmed to him at the price he had bid for it, viz., two thousand three hundred dollars, he would pay the judgment of said W. P. Rucker, who was the father of said Edward P. Rucker, and he did accordingly pay said judgment, and thereupon the sale was confirmed. This single transaction, they aver and charge, is of itself sufficient to sustain to the fullest extent the charge that the whole proceedings in the purchase of the land by their trustee, when their debt of five thousand dollars was the next to be paid, and gave their said trustee the entire control of the situation by virtue of his relation thereto, was a fraud upon their rights, and that he purchased the same with a view to his own advantage; and they aver and charge that the defendant knew before said sale was confirmed to him, and even when the purchase was made, about what he could sell to said Anderson for. They pray as in their original bill and for general relief.

The defendant, S. W. N. Feamster, answered the original bill, admitting the judgment assigned to him by Patsy Feamster, its amount and priority, and that it was assigned to him for the use of plaintiffs, and that she assigned the

same to Joseph A. Feamster for the same use, and that they respectively filed petitions in said cause claiming said assignment, and that on the hearing of the cause the court decided the assignment to him (S. W. N. Feamster) was the valid assignment, and he was "decreed to be the trustee for said children of whatever might be realized from said judgment;" but he denied that he accepted the trust. He also denied that said property was trust-property, and alleged that it was sold at a judicial sale, brought about by another party, which he took no part in procuring, and over which he could not have had control. He also denied that before said sale was confirmed he sold a part of said land to S. W. Anderson at any price, but admitted that after said sale he did sell part of said land to said Anderson. As to the allegation that said commissioners made a sale some time previous of said land for seven thousand dollars, which for some cause was set aside, he claimed that that was a negotiation for an exchange of said land for some property in the town of Alderson, and the price named was the estimated value of said Alderson property, but that no such offer was made in money, and said trade was never consummated. He also denied that he in any manner retarded or prevented any one from bidding on said property ; but, on the contrary, alleged that after the sale and before confirmation thereof said commissioners sought to get some one to put in an upset bid, and he was approached by a certain man, and requested to make a contract with him for part of the tract, and he replied that he could not and would not treat with him until after the court had acted upon the sale, and then and there encouraged said party to put in an upset bid if he desired the property ; and he put in issue by said answer all of the material allegations of plaintiffs' original bill.

He also filed an answer to the plaintiffs' amended bill, in which he admitted that he paid the debt of one hundred and forty nine dollars and fifty five cents reported in favor of W. P. Rucker, but under the following circumstances, viz.: Capt. R. F. Dennis, his attorney in the Joseph A. Feamster case, wrote him that he told said Rucker that if the sale was confirmed to respondent of said tract of land

said Rucker's debt should be paid; that he at first refused to pay it, but, seeing that said Dennis was in an embarrassing position in reference to the statement he had made to said Rucker, agreed to pay the same only on account of said Dennis'·statement to said Rucker; that he did not authorize said Dennis to make such arrangement, and did not know he had done so until the reception of said letter, which was not received until after the sale had been confirmed, and the court had adjourned; that he never agreed with said Rucker that he would pay his debt if he would not put in an upset bid, or upon any condition, prior to the confirmation of the sale; and that he paid the same only as above stated; and he put in issue all of the material allegations of said amended bill.

These answers were each replied to generally. Quite a number of depositions were taken, and on the 28th day of June, 1880, the court decreed that S. W. N. Feamster did not occupy such relation to the plaintiffs in his trusteeship as would prevent his bidding on the land of Joseph A. Feamster, and that he could not be held to account for the excess for which he sold to S. W. Anderson above what he paid for the land, and that the plaintiffs were not entitled to the recovery of the remaining unsold land, or to a sale thereof for their benefit, and that all they were entitled to recover was the sum of thirty one dollars and seventy five cents, returned to said trustees by the commissioners who made the sale, with interest from the 1st day of April, 1889, to be paid to them as they respectively arrived at the age of twenty one years.

From this decree the plaintiffs appealed to this Court.

The defendant, in his answer to the original bill, admits that he and Joseph A. Feamster, respectively, filed petitions in the case of Mary J. Feamster *v.* Joseph A. Feamster, claiming the assignment of said judgment from Patsy Feamster, which contest was decided in his favor, and he was decreed upon his own petition to be a trustee for the plaintiffs of whatever might be realized from said judgment, but he denies that he accepted the trust. · What more he could have done in the way of a formal acceptance of the trust it is difficult to perceive. He petitioned

the court for it, and in a contest with Joseph A. Feamster it was decreed in his favor, and he does not appear in any manner to have subsequently disclaimed it; and while said decree remained in his favor he remained the trustee, and was the only person entitled to control said judgment, and in this case he must be regarded as their trustee with reference to said judgment.

He being such trustee, the question presented for our determination is whether, in the circumstances of this case, he could consistently become the purchaser of said tract of land. His interest as a purchaser was diametrically opposed to the interests of his *cestui que trust.* His interest was to purchase the property at the smallest possible price, while their desire and interest were to make the property bring more than five thousand dollars, more than it did, so that their judgment would be paid. By purchasing the land at less than its value, and selling it again at a profit, the money which would and should have gone towards the satisfaction of their judgment goes into the pocket of their trustee; not for their benefit, but for his own. S. W. N. Feamster was fully aware of the desire on the part of S. W. Anderson to become the owner of a portion of said tract of land, and the conduct of said Anderson with reference to the purchase of a portion thereof clearly indicates his anxiety to buy the same.

The defendant, in his deposition, says that said Anderson came to him before the confirmation of said sale, and said he wanted a part of the land, but he told him he could not talk to him about it until the sale was acted upon by the court; but that, if confirmed, he would probably let him have part of it at what it was worth. Why could he not talk to Anderson in regard to the matter unless he was afraid of defeating the confirmation of the sale to himself, and depriving himself of the profit he had made by said purchase? Said Anderson was present when the land was put up for sale, and was unwilling to bid over two thousand three hundred dollars for the entire tract of three hundred and twenty acres, but in a few days after he paid S. W. N. Feamster three thousand dollars for one hundred five and three fourths acres—less than

one third of it. In other words he preferred to pay seven hundred dollars more for the one hundred five and three fourths acres—part of said tract—than he was willing to pay for the whole three hundred and twenty acres, assigning as a reason that he did not want the remain- ing two hundred acres, although he states that it was worth five dollars an acre. As a general thing, in business transactions the actions of men are controlled by their interests, and the fact that said Anderson declined to bid on said entire property under the circumstances, coupled with the additional fact that W. P. Rucker in his deposition states that he heard after said sale, and before its confirmation, that S. W. N. Feamster had sold a part of said land to said Anderson for a good deal more than the whole tract cost him, clearly indicates collusion and an understanding between said S. W. N. Feamster and said Anderson.

It was the plain duty of the said S. W. N. Feamster, acting as trustee for the infant children of his brother, to make said land bring every dollar it would for the benefit of his cestuis que trust, but when approached by Mr. Anderson in regard to the purchase of part of it he says he told him "he could not talk about it until the sale was acted upon by the court, but that, if confirmed, he would probably let him have part of it at what it was worth;" and when he comes to sell it we find how widely different his views were in regard to its worth from what they were when he was bidding on it at public sale. Again, the evident desire of said S. W. N. Feamster to have said sale confirmed is manifest by his conduct in reference to the upset bid of E. P. Rucker, assignee of the claim of William P. Rucker.

Henry Gilmer, who was acting as attorney for Commissioner McWhorter, states in his deposition that Dr. W. P. Rucker, who held a judgment against Joseph A. Feamster, and whose judgment was not paid by the sale made, told him that his son E. P. Rucker, intended to put in an upset bid, and to please hold the matter open, and write to S. W. N. Feamster, and tell him of the fact; that E. P. Rucker did bring him a bond to make the land bring

three thousand dollars if a new sale was ordered, and gave it to him; that he then wrote to said Feamster, and told him of the upset bid, and also wrote him, at the request of Dr. Rucker, that if he, Feamster, would pay or secure Rucker's judgment the bond would not be used; that Col. J. W. Davis was to go on the bond also, and told him he would do so. In the course of a few days said Feamster came to town, and the same day Dr. Rucker came to witness and told him his debt was all right, and that he, Gilmer, need not get Davis to sign the bond, but could go on, and have the order entered confirming the sale.

William P. Rucker, in his deposition, states that E. P. Rucker, at his instance, filed an upset bid, or prepared one, which was not offered because the attorney for S. W. N. Feamster assured him in court that if the upset bond was not filed, and the sale was confirmed, S. W. N. Feamster would pay his debt; that said attorney wrote a letter to said Feamster, which he sent him by Samuel F. Tyree or E. P. Rucker, and he received a reply, saying he would settle it in a short time, which he did.

From this evidence it appears that said Feamster, so far from desiring that an upset bid should be put in, was not only willing to, but did, pay E. P. Rucker, assignee of W. P. Rucker, one hundred and forty nine dollars and fifty five cents, to prevent a reopening of the biddings.

It is contended by counsel for the appellee that the land sold was not "trust-property," but was the land of Joseph A. Feamster. Suppose, by way of illustration, that the land was reasonably worth two thousand dollars, and that the infant children of Joseph A. Feamster, instead of owning a judgment-lien upon the land as they did, held a deed of trust upon it for one thousand nine hundred dollars, in one sense it would still be Joseph A. Feamster's land, although said trust-deed, if enforced, would consume almost its entire value; and, if the claim secured by said tract was in the hands of S. W. N. Feamster for the benefit of said infants, it would hardly be contended that the land itself was not the trust-subject. So with this judgment-lien, the record shows that the land constituted all the estate of said Joseph A. Feamster, and in the absence of

the land the judgment was worthless to said infants, as its value to them grew out of and solely depended upon the interest which said judgment-lien created for them in said land, and which the law conferred upon them the right to assert by subjecting said land to its payment. This lien and this right was their property, and it was in the hands of their trustee, whose duty it was to zealously guard and protect their interest. If prior liens existed against the land which would consume in their satisfaction one half of the land at a fair sale, then they or their representative must and could only look to the residue for satisfaction. Neither an execution issued under said judgment nor a certified copy of the judgment itself could be regarded as available trust-property, unless it could be used as a lien upon something out of which money could be realized. In this instance it was the land which gave the judgment value, and when that was sacrificed to prior liens the trust-subject was sacrificed; and, in the circumstances of this case, equity would regard the land as the trust-subject.

In Story's Equity Jurisprudence, § 321, the author says: " A trustee is never permitted to partake of the bounty of the party for whom he acts except under circumstances which would make the same valid if it were a case of guardianship. A trustee can not purchase of his *cestui que trust* unless under like circumstances. * * * But it is difficult to make out such a case where the exception is taken, especially when there is any inadequacy of price, or any inequality in the bargain. And, therefore, if a trustee, though strictly honest, should buy for himself an estate of his *cestui que trust*, and then should sell it for more, according to the rules of a court of equity, from general policy, and not from any peculiar imputation of fraud, he would be held still to remain a trustee to all intents and purposes, and not be permitted to sell it for himself. " See *Fox* v. *Mackreth*, 2 Brown, Ch'y 400 ; *Prevost* v. *Gratz*, 1 Pet. 367; *Hawley* v. *Cramer*, 4 Cow. 717.

In section 322, vol. 1, Story, Eq. Jur., the author further says : " But we are not to understand from this last language that to entitle the *cestui que trust* to relief it is indispensable to show that the trustee has made some advantage

where there has been a purchase by himself; and that, unless some advantage has been made, the sale to the trustee is good. That would not be putting the doctrine upon its true ground, which is that the prohibition arises from the subsisting relation of trusteeship. The ingredient of advantage made by him would only go to establish that the transaction might be open to the strong imputation of being tainted by imposition or selfish cunning. But the principle applies, however innocent the purchase may be, in a given case. It is poisonous in its consequences. The *cestui que trust* is not bound to prove, nor is the court bound to decide, that the trustee has made a bargain advantageous to himself. The fact may be so, and yet the party not have it in his power distinctly and clearly to show it. There may be fraud, and yet the party not be able to show it. It is to guard against this uncertainty and hazard of abuse, and to remove the trustee from temptation, that the rule does and will permit the *cestui que trust* to come at his own option, and, without showing essential injury, to insist upon having the experiment of another sale; so that in fact in all cases where a purchase has been made by a trustee on his own account of the estate of his *cestui que trust*, although sold at public auction, it is in the option of the *cestui que trust* to set aside the sale, whether *bona fide* made or not." See *Davoue* v. *Fanning*, 2 Johns. Ch'y 252; *Campbell* v. *Walker*, 5 Ves. 678; *Morse* v. *Royal*, 12 Ves. 355.

If this, then, be the law with reference to parties that are *sui juris*, with how much more strength should it apply where the parties represented by the trustee, as in this case, are infants.

In Adams' Equity, 160, the author says: "Lastly, a trustee must not avail himself of his fiduciary character for any object of personal benefit. His fundamental duty is to do his utmost for the *cestui que trust*, and every advantage which he appropriates to himself must be acquired by a dereliction of that duty:" and on page 162, note, it is said: "It seems a trustee may not purchase the trust property for his own benefit when it is sold under a judicial decree which he was not instrumental in procuring, unless by the order of sale he was specially allowed so to purchase;" referring to

*Chapin* v. *Weed,* 1 Clarke, 464; *Beeson* v. *Beeson,* 9 Pa. St. 279, etc.

In Minor's Institutes (volume 2, p. 212, § 10) the author says: "As a general principle it is well settled that trustees, agents, auctioneers, and all persons acting in a confidential character, are disqualified from purchasing the subject committed to them. The functions of buyer and seller are incompatible, and can not be exercised by the same person without great danger of fraud. Such transactions are constructively fraudulent, and are therefore voidable at the instance of the beneficiary, although, if he chooses to recognize them, they are binding upon the trustee" *etc.;* citing 1 Rob. Pr. (1st Ed.) 85; 1 Lom. Dig. 319; *Carter* v. *Harris,* 4 Rand. (Va.) 204; *Seger* v. *Edwards,* 11 Leigh. 213; *Buckles* v. *Lafferty,* 2 Rob. (Va.) 300; *Howery* v. *Helms,* 20 Gratt. 1; *Marsh* v. *Whitmore,* 21 Wall. 183.

Again he says on page 213: "It is admitted that a trustee can legally purchase the trust subject of a *cestui que trust* who is *sui juris,* and has discharged him from the relation of trustee, although even then the transaction will be scrutinized with guarded jealousy. So in like manner he may purchase when he has from the beginning disclaimed the trust and never acted in it; and finally a trustee may buy the trust subject by leave of the court of equity."

In the case under consideration, however, we find that the trustee brought himself within none of these exceptions, and, although he claims that he never accepted the trust, he asserted his claim to the subject by way of petition and was successful, and was never heard to disclaim the trust until he filed his answer in this case.

In the case of *Miller* v. *Holcombe,* 9 Gratt. 665, p't 5 of syllabus, the court held: "A trustee making a compromise with a third person in relation to a trust subject, though he may purchase the subject for himself, is bound to account as trustee for all the profits made on the transaction." LEE, J., delivering the opinion of the court in that case, said, on page 679: "The principle on which the prohibition to one standing in a fiduciary character to deal with the trust subject with reference to his own individual interests rests, is that not only would it be contrary to the design

under which he has obtained control of the subject, but he would be placed in such a situation as that his interests might, in reference to the conduct of the trust, by possibility come into conflict with those of the *cestui que trust.*" 2 Spence, Eq. Jur. 299; 2 Fonbl. Eq. 189.

This is precisely what happened to the defendant in this case in becoming a purchaser of the property on which the judgment he held as trustee was a lien—his interests as purchaser came in conflict with the interests of his *cestui que trust.* He wished to purchase the property as cheaply as he could, and their interests required that it should bring enough to satisfy their judgment. In order that he might realize a profit of seven hundred dollars, and still retain two hundred acres of the land, he preferred to have the sale confirmed at his bid, and he was willing to pay E. P. Rucker one hundred and forty nine dollars and fifty five cents to bring about that result, although this course sacrificed the entire judgment he held for the plaintiffs as trustee, with the exception of thirty one dollars and seventy five cents. It is a province of a court of equity to guard against these conflicting interests in which self and the weakness and greed of human nature assert themselves on the one hand, and sacred trusts and high moral obligations upon the other. It is to prevent this struggle between duty and self-interest that the law has provided that a trustee shall not be subjected to these temptations or placed in an attitude in which, in order to secure his own gain, he must place obstacles in the way to prevent those whom he should impartially represent from obtaining what they are justly entitled to.

Accordingly, in the case of *Newcomb* v. *Brooks*, 16 W. Va. 32, this Court has settled the law on this subject as follows:

1. "A person who occupies any fiduciary relation to another is bound not to exercise for his own benefit and to the prejudice of the party to whom he stands in such relation any of the powers or rights, or any knowledge or advantage of any description, which he derives from such confidential relations."

"A fiduciary can not make a valid purchase of the trust

property, though it be made at a judicial sale, under a decree made in an adverse proceeding. Any such purchase may be avoided at his option by any party to whom he owes such fiduciary relations."

"If a fiduciary purchases trust-property, and then resells it to a purchaser for valuable consideration with notice of the character of his title, the person to whom the fiduciary occupied the fiduciary relation may, at his option, avoid the sale, though the property has passed into the hands of a subpurchaser with notice."

"But if the subpurchaser had no notice of the vendor's title the sale can not be set aside, but the party can have redress against the fiduciary personally to the extent of the profits he made by the resale." See, also, *Lane* v. *Black*, 21 W. Va. 617.

The facts proven in this case clearly indicate that the defendant, instead of seeking to promote the interests of his *cestui que trust*, disregarded his plain duties as trustee, and sacrificed their interest for his individual gain, and for these reasons we are of opinion that the plaintiffs were entitled to the relief prayed for. The decree complained of must be reversed and the cause remanded to the Circuit Court of Greenbrier county for further proceedings to be had therein, and the appellee must pay the costs of this appeal.

REVERSED. REMANDED.